**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AUDREY ANITA HARRIS<br>163 Golf Club Drive<br>Langhorne, PA 19047 | : | CIVIL ACTION |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | CASE NO.: |
| v. | : | |
| | : | |
| JUNIPER VILLAGES AT BENSALEM<br>OPERATIONS, LLC<br>d.b.a. JUNIPER VILLAGE OF<br>BUCKS COUNTY<br>400 Broadacres Dr, Ste 445<br>Bloomfield, NJ 07003-3156 | : | |
| | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendant. | : | |
| | : | |

**CIVIL ACTION COMPLAINT**

Audrey Anita Harris (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.      This action has been initiated by Plaintiff against Juniper Villages at Bensalem Operations, LLC (hereinafter referred to as "Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII - 42 U.S.C. §§ 2000, *et. seq*.), the Age Discrimination in Employment Act ("ADEA"), and the Pennsylvania Human Relations Act ("PHRA"). Plaintiff asserts, *inter alia*, that she experienced unlawful workplace discrimination and retaliation, culminating in her termination from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2.    This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for civil rights violations under Title VII and the ADEA. There lies supplemental and/or ancillary jurisdiction over Plaintiff's state-law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

3.    This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.    Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5.    Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit under Title VII within 90 days of receiving a right-to-sue letter from the EEOC.

6.    Plaintiff properly exhausted her administrative remedies as to her PHRA claims by dual-filing a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and allowing her claims to pend for a period of one year before pursuing said claims in court.

**PARTIES**

7.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8.      Plaintiff is an adult individual, with an address as set forth in the caption.

9.      Defendant is a senior living facility located at 3200 Bensalem Blvd, Bensalem, PA 19020, that offers independent living, personal care, memory care, short-term rehabilitation, and long-term skilled care services.

10.     At all times relevant herein, Defendant acted by and through their agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

11.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12.     Plaintiff is a 77-year-old female.

13.     Plaintiff was hired by Defendant on or about May 1, 2023, as a Concierge Supervisor.

14.     Plaintiff had additional supervisory duties in the Transportation and Security Departments as well due to severe understaffing and inadequate funding for extra staff.

15.     Plaintiff held the title of Concierge Supervisor until on or about June 18, 2024, when Defendant changed her title to Chauffeur, which remained her title until her unlawful termination on November 8, 2024.

16.     Plaintiff's supervisory duties and pay remained the same despite the June 18, 2024 change in her title.

17. Plaintiff's duties included the supervision of 12 staff members; 6 concierges (24 hours daily, 7 days a week), 3 night security guards (12 hours daily, 7 days a week), and 3 chauffeurs.

18. After one chauffeur quit, Plaintiff took over his duties as well, driving residents to their appointments 2-3 days per week.

19. Plaintiff worked under the supervision of the Executive Director and the Environmental Director during her employment with Defendant.

    i. At her time of hire until in or about August 2024, her supervising Executive Director was John Brunner (male, age 50s/60s - "Brunner").

    ii. Between in or about August of 2024 and her termination, her supervising Executive Director was Katherine Bainbridge (female, age 40s, "Bainbridge")

    iii. From Plaintiff's hire date until about August 2023, Plaintiff was also supervised by the Environmental Director, Brian Simon (male, age 40s, "Simon").

    iv. Beginning in or about November 2023, Plaintiff began being supervised by the Environmental Director, John Boskoski (male, age 60s – "Boskoski").

### Gender Discrimination

20. Shortly after coming under the supervision of Boskoski, Plaintiff noticed that Boskoski favored and preferred male employees.

21. For example, Plaintiff experienced hostile and disparate treatment from Boskoski, including but not limited to:

   i.   Boskoski treated Plaintiff in a rude and demeaning way, regularly talking down to her, unlike her male co-workers;

   ii.   In contrast to her male co-workers, Boskoski often refused to meet with Plaintiff or have any discussions about her job duties, his expectations, and other information that Plaintiff needed to know to perform her job duties;

   iii.   Boskoski was very dismissive towards Plaintiff's knowledge and experience as an older woman, and when she objected to the same, Boskoski replied: "girls don't have any knowledge that could help me;"

   iv.   When talking about a plumbing issue within the facility, Boskoski was shocked by Plaintiff's ability to assist with the plumbing issues, stating with disbelief, "I don't know many women who are plumbers;" and

   v.   Boskoski requested Plaintiff and multiple other female employees to act as his secretary.

22. The aforementioned acts of discrimination are only a few examples of the discriminatory and disparate treatment that Plaintiff was subject to on account of her gender and is not meant to be an exhaustive list.

23. The aforementioned gender-based discrimination of Plaintiff by Boskoski was consistent, creating a hostile and uncomfortable work environment where Plaintiff felt devalued and belittled.

### -Age Discrimination-

24. In addition to the aforementioned gender discrimination that Plaintiff faced while employed with Defendant, Plaintiff was also subjected to disparate and discriminatory treatment because of her age.

25.     For example, but not intended to be an exhaustive list:

    i.   At least once before her unlawful termination, Boskoski asked if Plaintiff was able to adequately "run the building" and "move quickly enough" due to her knees (a bi-product of age) and her advanced age;

    ii.   Plaintiff shared with Boskoski certain architectural drawings for the complex, which the Plaintiff had obtained from Defendant's Chief Financial Officer ("CFO"), Charles Hastings ("Hastings");

        1.   In response, Boskoski told Plaintiff that he had not reviewed them because he thought they did not include MEP diagrams (referring to "Mechanical, Electrical and Plumbing" diagrams), using the technical abbreviation to intimidate or confuse her;

        2.   When Plaintiff explained that the drawings did in fact have MEP diagrams, Boskoski showed extreme shock that Plaintiff knew what MEP diagrams were, stating: "I knew you were old, but didn't know you had any background in this;"

    iii.   When one older resident inquired when Plaintiff might retire, Boskoski stated "well she is old enough, and can retire whenever she wants too" – indicating his strong belief that Plaintiff was too old to work for Defendant and should retire;

    iv.   Plaintiff was treated in a rude and demeaning manner and often ignored or dismissed, despite having made great contributions to Defendant through her employment.

6

**-Retaliation-**

26.    Plaintiff repeatedly objected to Boskoski's hostile gender and age-related discriminatory behavior and remarks, making it clear that she did not intend to retire anytime soon and that he was underestimating her because of her sex and age.

27.    Boskoski ignored Plaintiff's objections, continued his discriminatory conduct and subjected her to retaliation in response to the same.

28.    For example, shortly following her objections to his discriminatory conduct and comments, Boskoski began excluding Plaintiff from management meetings and continued to dismiss her ideas.

29.    As a result of the ongoing hostility and animosity, in or about September 2024, Plaintiff filed a complaint against Boskoski to Silvana Qypi ("Qypi" - Female), the Human Resources Director under Boskoski, as well as Bainbridge.

30.    On or about September 16, 2024, Plaintiff met with Qypi and Bainbridge to discuss her complaints, during which she emphasized her concerns of age and gender discrimination.

31.    While Bainbridge assured Plaintiff that Boskoski would not be made aware of her complaint, this was a false assurance, as Boskoski acknowledged Plaintiff's complaint approximately one day later, when he approached Plaintiff and asked her to meet with him to further discuss her complaints.

32.    While Plaintiff agreed to meet with Boskoski and even scheduled a meeting with him, Boskoski did not attend the meeting.

33.    Defendant never properly investigated Plaintiff's aforesaid complaints of gender and age discrimination and instead, Plaintiff was subjected to increased hostility and animosity

7

(as well as continued discrimination) up and through her unlawful termination on November 8, 2024.

34.     For example, Boskoski continued

    i.   dismissing Plaintiff's ideas/suggestions regarding management;

    ii.   treating her in a demeaning manner;

    iii.   withholding essential information about her job duties and setting her up to fail; and

    iv.   generally treating younger and/or male employees more favorably.

35.     On June 18, 2024, Defendant changed Plaintiff's title to Chauffeur and removed her from Defendant's management list without her consent.

36.     She was only made aware of her new title when Rikki Goldenberg ("Goldenberg"), the Catalyst Innovation and Implementation Specialist from the Bloomfield, NJ location, advised Plaintiff that she was no longer on Defendant's management list, and was instead listed as a Chauffeur.

37.     In or about June 2024, Defendant hired a 17-year-old male named Joel Yzeirllari ("Yzierllari") as a security officer/concierge (and thus Plaintiff had direct supervision over him).

38.     Upon information and belief, Yzierllari was not fit for the position he held, as he:

    i.   was not yet 18 years old (being 18 is a requirement for the job);

    ii.   was still in high school at the time he was hired (a high school diploma is a requirement for the job);

    iii.   had no prior experience in security or senior care; and

    iv.   did not speak and/or understand English proficiently and could not communicate effectively with residents.

39. Defendant also did not provide translation to ensure that Yzierllari could communicate with residents.

40. In addition to the foregoing, Yzeirllari had significant performance issues and did not properly follow safety guidelines, protocol, or Plaintiff's instructions.

41. As a result of the foregoing, Plaintiff sent a detailed performance review of Yzeirllari to Boskoski on August 2, 2024 by email, explaining that he was not fit for his current position and recommending his reassignment to a different role.

42. Yzeirllari's aforesaid conduct put residents at risk on the following occasions:

    i. Yzeirrlari failed to address a Med-Alert, leaving a fallen resident alone and on the floor while trying to determine if a second Med-Alert (for a different resident) was urgent, despite:

        1. being aware that, per company policy, assisting a fallen resident who is unable to get up takes priority over other tasks;

        2. being aware that it was not his duty to determine if the second Med-Alert was urgent or not;

        3. being aware that the second Med-Alert was a general call to any other security personnel who were available, and was not for him in particular; and

        4. not being available to take the second Med-Alert.

    ii. In or about October 2024, a resident called and informed Defendant that their father (a resident) had fallen and could not get up.

        1. Plaintiff instructed Yzeirllari to escort the family with a wheelchair to the resident's apartment, as the family did not have a key to

enter the apartment, and he was the only one who could let them in;

2. Instead of following Plaintiff's instructions, Yzeirllari left the family alone to check on an elevator alarm;

3. After he checked the elevators, he went back to the front desk, and not to the family of the resident who still needed help accessing the apartment, delaying the family's care of their father who had fallen;

4. As discussed *supra*, Yzeirllari should have been aware that caring for fallen patients who could not get up was first priority over other alerts.

iii. In or about late October or early November 2024, an elderly resident requested Yzierllari's assistance because she was suffering from severe gastric and bowel pain and was becoming weak.

1. When Yzierllari informed her no medical staff was available, the resident requested that he call 911, which he did not do;

2. The resident called back 20 minutes later, having not received medical attention, and Yzierllari still had not called 911;

3. Yzierllari alleged that the resident had never asked him to call 911;

4. The resident filed a complaint because she felt the quality of her care was unsatisfactory and that she had been left feeling scared and upset.

iv. On or about November 4, 2024, Yzierllari again failed to follow Plaintiff's instructions when Plaintiff instructed him to open a locked back door to a resident building and guide an EMT to the room of a resident complaining of chest pains.

1. Instead of following instructions, Yzierllari propped one door open with a rock and did not man the door;

2. The consequences of leaving the door unmanned could have been dire for the fallen resident, as the back of the building was dark and there were multiple doors that could have confused the EMTs; and

3. Residents coming in and out of the facility could have closed and locked the door, blocking the EMT's entry; and

4. Even if the EMTs were able to enter the building, they would not have known how to find the resident's apartment.

43. While Plaintiff had reported Yzierllari's aforementioned misconduct to Boskoski and Bainbridge multiple times because his actions put the residents' lives and health at risk, her concerns were never investigated, and Yzierllari remained employed.

44. After the November 4, 2024 incident (discussed *supra*), Plaintiff corrected Yzierllari sternly in front of another newly hired employee, Nakiya Williams ("Williams") because he had committed multiple infractions at this point and had put the life of residents at risk.

45. On or about November 8, 2024, Defendant suspended and then swiftly terminated Plaintiff.

11

46. The reason for the suspension and termination was that Qypi accused Plaintiff of yelling at Yzierllari and punching him in the arm, which is completely false.

47. Upon information and belief, Defendant did not interview Williams, a vital witness to the alleged conduct, before deciding to suspend and then terminate Plaintiff.

48. Upon information and belief, the alleged conduct was captured on security camera footage, but this footage would be deleted 72 hours from the incident unless saved by Defendant management.

49. Thus, Plaintiff called Bainbridge on November 6, 2024 to notify her that she must save the footage from November 4, 2024, to prove that Plaintiff did not commit the alleged misconduct.

50. Upon information and belief, Defendant did not review this footage and allowed it to expire before deciding to suspend and then terminate Plaintiff.

51. Defendant disciplined and terminated Plaintiff instead of Yzierllari (a younger male), whom she had complained about multiple times leading up to her termination for committing several violations, being insubordinate (by refusing to follow instructions), and for putting residents' lives at risk (on several occasions).

52. Upon information and belief, after Plaintiff's termination, her duties were assigned to 3 younger Directors in their 30s and 40s.

53. Based on the foregoing, Plaintiff believes that she was subjected to a hostile work environment, disciplined, and ultimately terminated by Defendant for discriminatory and/or retaliatory reasons under Title VII, the ADEA, and state law.

**COUNT I**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Gender Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

54.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55.    Plaintiff was subjected to a hostile work environment through gender discrimination and retaliation in violation of Title VII.

56.    Plaintiff complained to Defendant's management about the aforesaid gender discrimination to no avail, and instead of properly investigating or remedying her concerns, Defendant's management subjected her to a retaliatory hostile work environment and terminated her employment.

57.    Plaintiff believes and avers that her gender was a motivating or determinative factor in Defendant's decisions to suspend Plaintiff and then terminate her employment.

58.    Plaintiff also believes and therefore avers that she was suspended and then terminated because of her complaints of gender discrimination.

59.    Plaintiff asserts that Defendant's decisions (discussed *supra*) were made in violation of Title VII.

**COUNT II**
**Violations of Pennsylvania Human Resources Act ("PHRA")**
**([1] Gender Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

60.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

61.    Plaintiff re-asserts and re-alleges each and every allegation as set forth in COUNT I of the instant action, as such actions constitute identical violations of the Pennsylvania Human Relations Act.

13

## COUNT III
### Violations of the Age Discrimination in Employment Act ("ADEA")
### ([1] Age Discrimination; [2] Retaliation; [3] Hostile Work Environment)

62.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

63.    Plaintiff is 77 years old.

64.    Plaintiff was subjected to a hostile work environment because of her age through disparate treatment and discriminatory comments.

65.    While Plaintiff complained of Defendant's violations under the ADEA, her concerns were never properly investigated or remedied. Instead, she was subjected to retaliatory action, a hostile work environment, and ultimately terminated.

66.    Plaintiff also believes and therefore avers that she was suspended and terminated because of her age and/or complaints of age discrimination

67.    Plaintiff asserts that Defendant's decisions (discussed *supra*) were made in violation of the ADEA.

## COUNT IV
### Violations of Pennsylvania Human Resources Act ("PHRA")
### ([1] Age Discrimination; [2] Retaliation; [3] Hostile Work Environment)

68.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

69.    Plaintiff re-asserts and re-alleges each and every allegation as set forth in COUNT III instant action, as such actions constitute identical violations of the Pennsylvania Human Relations Act.

14

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and is to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.      Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C.      Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law(s) asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: May 27, 2026

16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

Audrey Anita Harris                               :                    CIVIL ACTION
                                                  :
                           v.                     :
                                                  :
Juniper Villages at Bensalem Operations, LLC d/b/a Juniper Village of Bucks County     NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.                (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                                                        (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court.  (See reverse side of this form for a detailed explanation of special
     management cases.)                                                           (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (x )

5/27/2026                                                              Plaintiff
_____        _____        _____
**Date**                **Attorney-at-law**                  **Attorney for**

215-639-0801               215-639-4970                        akarpf@karpf-law.com
_____        _____        _____
**Telephone**            **FAX Number**                       **E-Mail Address**

**(Civ. 660) 10/02**

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: __Defendants place of business__

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                        Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.    Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A. *Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B. *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____
    _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

HARRIS, AUDREY ANITA

**DEFENDANTS**

JUNIPER VILLAGES AT BENSALEM OPERATIONS, LLC D/B/A JUNIPER VILLAGE OF BUCKS COUNTY

**(b)** County of Residence of First Listed Plaintiff   Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Essex
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*     Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product     Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument |     Liability    ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel &     Pharmaceutical     Slander     Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'     Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) |     Liability    ☐ 368 Asbestos Personal ☐ 340 Marine     Injury Product ☐ 345 Marine Product     Liability | | ☐ 835 Patent – Abbreviated New Drug Application ☐ 840 Trademark | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits |     Liability    **PERSONAL PROPERTY** ☐ 350 Motor Vehicle    ☐ 370 Other Fraud | **LABOR** ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending | ☐ 720 Labor/Management | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract |     Product Liability    ☐ 380 Other Personal |     Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal     Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise |     Injury    ☐ 385 Property Damage ☐ 362 Personal Injury -     Product Liability     Medical Malpractice | ☐ 751 Family and Medical Leave Act ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | Exchange ☐ 890 Other Statutory Actions ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 791 Employee Retirement | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment    ☐ 510 Motions to Vacate     Sentence | | or Defendant) ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/    ☐ 530 General     Accommodations | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities -    ☐ 535 Death Penalty     mployment    **Other:** | **IMMIGRATION** ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities -    ☐ 540 Mandamus & Other     Other    ☐ 550 Civil Rights ☐ 448 Education    ☐ 555 Prison Condition    ☐ 560 Civil Detainee -     Conditions of     Confinement | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000); ADEA (29USC621)

Brief description of cause:
Violations of Title VII, ADEA and the PHRA.

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE 5/27/2026     SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____